UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN PAVLICA,

                    Plaintiff,                Civil Action No. 13-13187
                                            Honorable Victoria A. Roberts
                                            Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 9]

Plaintiff Brian Pavlica ("Pavlica") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [8, 9], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Pavlica is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [9] be GRANTED, Pavlica's Motion for Summary Judgment [8] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

II.    **REPORT**

    A.    **Procedural History**

On December 15, 2010, Pavlica filed applications for DIB and SSI, alleging a disability onset date of October 29, 2010.  (Tr. 119-31).  These applications were denied initially on March 3, 2011.  (Tr. 70-77).  Pavlica filed a timely request for an administrative hearing, which was held on February 14, 2012, before ALJ Peter Dowd.  (Tr. 23-55).  Pavlica, who was represented by attorney Daniel Pollard, testified at the hearing, as did vocational expert Pauline McEachin. (*Id.*).  On April 30, 2012, the ALJ issued a written decision finding that Pavlica is not disabled. (Tr. 11-19).  On May 24, 2013, the Appeals Council denied review.  (Tr. 1-3).  Pavlica filed for judicial review of the final decision on July 25, 2013.  (Doc. #1).

    B.    **Background**

        *1.    Disability Reports*

In an undated disability report, Pavlica indicated that his ability to work is limited by a herniated disc and an annular tear in his back.  (Tr. 142).  According to Pavlica, his conditions became severe enough to prevent him from working on October 29, 2010.  (*Id.*).  Prior to stopping work, Pavlica worked as a product selector for Gordon Food Service ("GFS") (from February of 2005 through October of 2010), and before that as a car washer, dishwasher, cashier, and cook.  (Tr. 143).

In a function report dated January 20, 2011, Pavlica reported that he lives alone in a house.  (Tr. 165).  When asked how his condition limits his ability to work, Pavlica indicated that he cannot bend, lift, or be on his feet for long periods of time without experiencing significant pain.  (*Id.*).  When asked to describe his daily activities, Pavlica reported that he takes a shower, clears his driveway with a self-propelled snowblower (if necessary), cares for his son and pets, and prepares meals.  (Tr. 166).  His condition affects his sleep because his back pain wakes him

up and he needs to change positions. (*Id.*). He has no problems with personal care and is able to prepare meals on a daily basis. (Tr. 167). He is able to do laundry, vacuum, mow his lawn (with a riding lawnmower), wash dishes, and use a self-propelled snowblower. (*Id.*). In addition, he is able to drive, go shopping (two or three times a month), pay bills, and handle a checking and savings account. (Tr. 168). His hobbies include watching television, playing with his son, online gaming, fishing, and hunting. (Tr. 169). He spends time with others and regularly visits family and friends. (*Id.*).

When asked to identify functions impacted by his condition, Pavlica checked lifting, squatting, bending, standing, walking, sitting, and kneeling. (Tr. 170). He indicated that he tries to avoid sitting, standing, and walking for long periods of time. (*Id.*). He further indicated that his doctor "has [him] on a 15 lb weight restriction." (*Id.*).

### 2.    *Pavlica's Testimony*

At the time of the February 14, 2012 hearing before the ALJ, Pavlica was 26 years old and lived alone in a house. (Tr. 29-30). He testified that he graduated from high school but did not go to college. (Tr. 30). Pavlica worked for GFS as a product selector from 2005 until he injured his back at work in August of 2010. (Tr. 33, 39). In that job, he moved around a conveyor belt, picking up cases of product (that weighed between 10 and 100 pounds) and putting them on the belt. (Tr. 33). Pavlica testified that after he injured his back, he returned to work on a light duty basis as a security assistant at GFS. (Tr. 35, 48). However, he stopped working on October 29, 2010, because he could not "handle the sitting or standing for any long period of time." (Tr. 35, 48-49). After that, he received short-term disability benefits from GFS for six months and, since April of 2011, $962 bi-weekly in long term disability benefits. (Tr. 32, 35-36). Pavlica testified that he had also applied for worker's compensation benefits, but he was

"still in court over the matter." (Tr. 36).

Pavlica testified that he injured his back while lifting weights in 2002, but was able to work, despite that condition, until 2010. (Tr. 38). Since he re-injured his back in August of 2010, Pavlica has had constant back pain, which radiates (to some degree) down both legs at times. (Tr. 39). He underwent physical therapy and took medication, which improved his pain slightly. (*Id.*). Pavlica testified that his attorney referred him to Dr. Kevin Robinson, an orthopedic surgeon, but indicated that surgery was not yet being discussed as a viable option. (Tr. 40). According to Pavlica, Dr. Robinson placed him on a 30-pound lifting restriction, with no bending or twisting, and prescribed medication. (Tr. 41-42).

Pavlica testified that he is able to attend to his own personal care, care for his son (who resides with him half of each month), care for his pets, prepare meals, mow his lawn (using a riding lawnmower), wash dishes, go shopping, and drive. (Tr. 43-46). He also testified that, in December of 2011, he flew out to Seattle, Washington, and drove back to Michigan with his sister. (Tr. 46-47). Upon questioning by his attorney, however, Pavlica said that he can sit or stand for only one or two hours at a time and can walk only 100 yards without pain. (Tr. 50).

### 3. *Medical Evidence*

The medical evidence indicates that Pavlica suffered a low back injury at work on August 5, 2010. (Tr. 226). At an August 31, 2010 visit to Richard Neal, PA-C, Pavlica reported that he had been working "light duty" for the three-week period following the injury. (Tr. 236). X-rays performed that day showed only "very minor" disc narrowing at L4-L5. (Tr. 244). Mr. Neal cleared Pavlica to return to work with restrictions (no lifting over 10-12 pounds, no lifting below the knees, repetitive bending or stooping as tolerated, and sit/stand as tolerated) and recommended that he undergo physical therapy. (Tr. 239). At follow-up visits on September 10 and 20, 2010, Pavlica reported that he had been working light duty "without issues." (Tr. 219,

4

226).   On September 27, 2010, however, Pavlica returned to see Mr. Neal, complaining of increased pain over the past few days.  (Tr. 212).  Mr. Neal took Pavlica off work due to the need for safety sensitive medications on a regular basis.  (Tr. 214).

On September 30, 2010, an MRI of Pavlica's lumbar spine revealed an annular tear and broad-based central disc protrusion at L4-L5, causing mild bilateral neural foraminal narrowing, mild central canal stenosis, and abutting both traversing L5 nerve roots.  (Tr. 210-11).  At Pavlica's next visit, on October 1, 2010, Mr. Neal noted that Pavlica had not been working due to increased pain in his lower back that radiated into his right thigh and, occasionally, into his right heel.  (Tr. 199).  Mr. Neal again recommended that Pavlica remain off work due to his medications.  (Tr. 201).

On October 18, 2010, Mr. Neal indicated that he had talked with someone about allowing Pavlica to perform a light duty job (security assistant) at GFS that would allow him to sit/stand/walk as tolerated with no lifting or bending requirements.  (Tr. 186).  Mr. Neal recommended that Pavlica return to work in this light duty job and instructed him to use over-the-counter medication for pain during work hours.  (Tr. 188).  He specifically noted that Pavlica "did not seem pleased with this treatment plan."  (*Id.*).

On November 23, 2010, Mr. Neal filled out a form entitled "Attending Physician's Statement of Functionality."  (Tr. 184-85).  Mr. Neal diagnosed Pavlica with an annular tear and disc protrusion at L4-L5.  (Tr. 184).  He recommended that Pavlica sit/stand/walk as needed and tolerated, and specifically stated that Pavlica was able to "work as security assistant per GFS job description."  (Tr. 185).  Mr. Neal further opined that Pavlica could lift 1-3 pounds, could occasionally bend, and could never kneel or crouch.  (*Id.*).

On January 11, 2011, Pavlica saw Kevin Robinson, M.D., an orthopedic surgeon, and

reported that he had been off work since November of 2010. (Tr. 264-65). On examination, Dr. Robinson noted that Pavlica was in mild distress and ambulated with a slow, stiff gait. (Tr. 264). He had palpable spasm in the lumbar spine musculature, decreased extension and lateral bending, and a positive straight leg raise on the right. (*Id.*). Dr. Robinson reviewed Pavlica's September 2010 MRI and noted that it revealed a herniated disc at L5-S1 with radiculopathy. (*Id.*). Dr. Robinson noted that Pavlica had not responded to conservative treatment and suggested epidural steroid injections. (Tr. 265). Dr. Robinson also indicated that he wanted Pavlica to try restricted work, with limited sit-to-stand options; no bending, twisting, or stooping; and no lifting more than 10-15 pounds. (*Id.*).

When Pavlica returned to see Dr. Robinson on February 15, 2011, he indicated that he had not had epidural steroid injections but, rather, had undergone physical therapy. (Tr. 263). He reported that he still had some low back pain with long periods of standing and walking, but said that his leg pain was "minimal." (*Id.*). On examination, his straight leg raise test was positive, and his gait was still somewhat slow but steady. (*Id.*). On March 15, 2011, Pavlica returned to see Dr. Robinson, describing his pain as "very tolerable" and indicating that he wanted to continue to hold off on epidural steroid injections. (Tr. 258). Indeed, Pavlica indicated that he "is active and walks between 2 and 3 miles every other day." (*Id.*). On examination, Pavlica rose from a chair easily, walked with a normal gait, and was able to heel and toe walk without difficulty. (*Id.*). He had full strength in his lower extremities and negative straight leg raising tests bilaterally. (*Id.*).

At a follow-up visit to Dr. Robinson on May 26, 2011, Pavlica indicated that he had not been able to return to work because there was no work available within his restrictions. (Tr. 261). Dr. Robinson encouraged Pavlica to continue walking and performing strengthening

exercises.  (*Id.*).  He also provided Pavlica with less restrictive workplace limitations, which included no lifting greater than 30 pounds, no bending, no twisting, and a sit/stand option.  (*Id.*).  At Pavlica's next visit to Dr. Robinson, he indicated that he was having some good days and some bad days.  (Tr. 260).  He reported walking "a few miles a week," but stated that he experienced pain radiating down his right leg when he increased his activity.  (*Id.*).  At his most recent visit to Dr. Robinson, on January 24, 2012, Pavlica denied any significant radicular leg pain.  (Tr. 259).  On examination, however, he still had some spasm and tenderness in the lower lumbar region with palpation and a positive straight leg raise test on the right.  (*Id.*).  Dr. Robinson indicated that Pavlica still had not undergone epidural steroid injections, and he prescribed medication for pain and muscle spasms.  (*Id.*).

> 4.    *Vocational Expert's Testimony*

Pauline McEachin testified as an independent vocational expert ("VE") at the administrative hearing.  (Tr. 51-54).  First, the VE testified that Pavlica's past relevant work as a product selector (food service warehouse worker) was unskilled in nature and performed at the medium or heavy exertional level.  (Tr. 52).  Then, the ALJ asked the VE to imagine a claimant of Pavlica's age, education, and work experience, who could perform unskilled work at the light exertional level, with the following additional limitations:  he can maximally lift weights of 20 pounds and can repetitively lift weights of 10 pounds or less; he can stand, walk, and sit for six hours in an eight-hour work day, but needs the occasional ability to alternate between sitting and standing; he can occasionally climb stairs, balance items, and stoop, but he should not be expected to do any significant amount of kneeling, crouching, or crawling; and he needs to avoid concentrated exposure to hazards, such as unprotected heights or moving industrial machinery.  (Tr. 52-53).   The VE testified that the hypothetical individual would not be capable of

performing Pavlica's past relevant work. (Tr. 53). However, the VE testified that the hypothetical individual would be capable of working as an information clerk (1,700 jobs in Michigan's lower peninsula), inspector (4,000 jobs), and assembler (6,000 jobs). (*Id.*).

### C.    Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing

20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Pavlica is not disabled under the Act. At Step One, the ALJ found that Pavlica has not engaged in substantial gainful activity since October 29, 2010, his alleged onset date. (Tr. 13-14). At Step Two, the ALJ found that Pavlica has the severe impairment of degenerative disc disease of the lumbar spine with low back pain and episodes of leg pain. (Tr. 14-15). At Step Three, the ALJ found that Pavlica's back impairment does not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then assessed Pavlica's residual functional capacity ("RFC"), concluding that he is capable of performing unskilled, light work, with the following additional limitations:  he can maximally lift weights of 20 pounds and can repetitively lift weights of 10 pounds or less; he can stand, walk, and sit for six hours in an eight-hour work day, but needs the occasional ability to alternate between sitting and standing; he can occasionally climb stairs, balance items, and stoop, but he should not be expected to do any significant amount of kneeling, crouching, or crawling; and he needs to avoid concentrated exposure to hazards, such as unprotected heights or moving industrial machinery. (Tr. 15-17).

At Step Four, the ALJ determined that Pavlica is unable to perform his past relevant work as a food service warehouse worker. (Tr. 17). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Pavlica is capable of performing a significant number of jobs that exist

in the national economy. (Tr. 18-19). As a result, the ALJ concluded that Pavlica is not disabled under the Act. (Tr. 19).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may

look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.    Analysis

It is difficult to discern Pavlica's specific arguments in support of his motion for summary judgment. His motion primarily consists of a compilation of quotes of black letter case law, with little accompanying analysis or application of that law to the facts of his case. Pavlica does assert that the ALJ erred in "assessing [his] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [his] impairments." (Doc. #8 at 6). Pavlica does not, however, identify how or in what way the ALJ's hypothetical fails to "accurately portray" his impairments, nor does he explain which "medical records of evidence" the ALJ allegedly disregarded in finding him less than fully credible. Pavlica cannot leave it to the Court to scour the record for evidence supporting his claims. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal quotations omitted).

Nevertheless, the Court will attempt to address Pavlica's arguments.

Pavlica first asserts that "for a response to a hypothetical question to constitute substantial evidence, each element of a hypothetical must accurately describe the Claimant." (Doc. #8 at 10 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). Then, Pavlica simply concludes that "each element of the [ALJ's] hypothetical does not accurately describe [him] in all significant, relevant respects." (*Id.*). Pavlica fails, however, to identify any specific limitation(s) that the ALJ did not incorporate into his hypothetical. He also fails to point to any evidence in the record that supports additional limitations beyond those the ALJ found credible. While these failings alone are grounds for rejecting Pavlica's argument, *McPherson*, 125 F.3d at 995-96, the Court also finds his argument substantively lacking in merit.

In his decision, the ALJ thoroughly reviewed and discussed the record evidence, concluding that Pavlica has the RFC to perform unskilled work at the light exertional level, with certain additional limitations. (Tr. 15-17). In his motion, Pavlica points out that he testified that "Dr. Robinson gave him [a] 30 pound limit." (Doc. #8 at 10). However, the ALJ's RFC finding more than accommodated this limitation by limiting Pavlica to lifting no more than 20 pounds, (Tr. 15), a limitation the ALJ also included in the hypothetical question he posed to the VE (Tr. 52-53). Similarly, Pavlica asserts in his motion that he testified he "can only sit and stand for 1-2 hours" before he needs to change position. (Doc. #8 at 11). However, as discussed below, the ALJ provided good reasons for discounting Pavlica's testimony. And, again, Pavlica's testimony is not inconsistent with the ALJ's finding that he can perform a limited range of light work. *See* 20 C.F.R. §404.1567(b) (light work typically requires some combination of walking, standing, and sitting). To that end, the ALJ specifically included a sit/stand option in his RFC finding and in the hypothetical question he posed to the VE. (Tr. 15, 52-53). Thus, these arguments are not

persuasive.

Pavlica also points out that, upon questioning by Pavlica's attorney, the VE testified that there would be no competitive work for an individual who is off task 20% of the time. (Doc. #8 at 12 (citing Tr. 54)). However, Pavlica points to no opinion of record (or other evidence) suggesting that he would be off task 20% of the time. Indeed, both Mr. Neal and Dr. Robinson opined that Pavlica could return to work in a capacity consistent with the ALJ's RFC finding, and neither suggested that he would need to be off task 20% of the time. (Tr. 186, 261). Similarly, while Pavlica points the Court to the VE's testimony that an employee who misses work one day each month would be precluded from competitive employment (Doc. #8 at 12 (citing Tr. 54)), he identifies no evidence supporting such a limitation, and the Court could find none.

Because the ALJ reasonably accommodated Pavlica's documented limitations in both his RFC finding and in the hypothetical question he posed to the VE, Pavlica's argument that the ALJ formed an inaccurate hypothetical has no merit.

Pavlica also argues that the ALJ erred in "failing to properly evaluate [his] credibility." (Doc. #8 at 10-12). After fully considering Pavlica's claimed limitations, the ALJ found that Pavlica was not fully credible. (Tr. 16). The Sixth Circuit has held that an ALJ is in the best position to observe a witness' demeanor and to make an appropriate evaluation as to his credibility. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

When a complaint of pain is in issue, if the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire

13

case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible.  *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996).  The ALJ did so here.  First, the ALJ properly noted that a claimant's RFC "is not based upon the claimant being pain-free, but rather is based on his ability to do work activities on a sustained basis despite limitations…."  (Tr. 16).  The ALJ then noted that Pavlica described daily activities that are "not limited to the extent one would expect given the complaints of disabling symptoms and limitations."  (*Id.*).  Specifically, the ALJ pointed out that Pavlica has no problem with personal care, cares for and plays with his young son, cares for his pets, prepares meals, washes dishes, uses a riding lawnmower and a self-propelled snowblower, drives, and shops.  (*Id.*).  The ALJ also referred to Pavlica's testimony that, in December of 2011, he drove with his sister from Rainier, Washington to Michigan.  (Tr. 17).  It was appropriate for the ALJ to consider these facts in assessing Pavlica's credibility.  *See Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain).  In addition, the ALJ observed that both of Pavlica's treating sources – Dr. Robinson and Mr. Neal – opined that Pavlica can work with some restrictions.  (Tr. 17).  Pavlica makes no effort to contradict the ALJ on any of these points, all of which were valid reasons for discounting his credibility.[1]  In summary, the ALJ's credibility assessment is supported by substantial evidence

---

[1] The Court also notes the fair and balanced nature of the ALJ's discussion.  He found that "the medical records establish the existence of [Pavlica's] back impairment, which is 'severe.'"  (Tr. 15).  And, as noted, the ALJ provided a detailed discussion of Pavlica's medical records, including ones that would be associated with certain work restrictions.  (Tr. 14-15).  However, for the reasons discussed above, the ALJ reasonably found that "while [Pavlica] has some impairments from [his back impairment], these limitations are not disabling."  (Tr. 16).  The Court notes that where the Commissioner's decision is supported by substantial evidence – as it

and should not be disturbed.

In the remainder of his motion, Pavlica does little more than provide citations to numerous authorities discussing, in general terms, the amount of weight an ALJ should give to a treating physician's opinion.  (Doc. #8 at 13-15).  As discussed above, however, Pavlica has not referred (and cannot refer) to any statement by Mr. Neal or Dr. Robinson that shows he is more limited than the ALJ found.  Indeed, as discussed more fully above, the ALJ's conclusion that Pavlica can lift no more than 20 pounds is actually *more* generous than Dr. Robinson's 30-pound lifting restriction.  (Tr. 16, 261).  Thus, there is no treating source opinion in the record that contradicts the ALJ's properly-supported findings.

Because the RFC that Pavlica can perform light work with certain additional restrictions is supported by the substantial evidence discussed above, and because the ALJ's hypothetical to the VE matched that RFC almost verbatim, (*cf.* Tr. 15 with Tr. 52-53), the ALJ properly relied on the VE's testimony that Pavlica, even with these restrictions, can perform a significant number of jobs.  For these reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is correct and supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [9] be GRANTED, Pavlica's Motion for Summary Judgment [8] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: February 19, 2014                        s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge

---

is here – "it must be affirmed … even if substantial evidence also supports the opposite conclusion."  *Cutlip*, 25 F.3d at 286.

**NOTICE**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 19, 2014.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager

16